## IN THE CIRCUIT COURTFOR PRINCE GEORGE'S COUNTY MARYLAND

**Thomas John Alston,**
10012 Cedarhollow Lane
Largo, MD 20774

    Plaintiffs,

v.

**Equifax Information Services, LLC**
**Serve:** CSC-Lawyers Incorp. Service Co.
    7 Saint Paul Street, Suite 820
    Baltimore, MD 21202

    Defendant,

**Experian Information Solutions, Inc**
**Serve:** Corporation Trust Incorporated
    351 West Camden Street
    Baltimore, MD 21201

    Defendant,

**Trans Union, LLC**
**Serve:** CSC-Lawyers Incorp. Service Co.
    7 Saint Paul Street, Suite 820
    Baltimore, MD 21202

    Defendant.

CIVIL ACTION NO. CAL 16-41597
**JURY TRIAL DEMANDED**

PR GEO CO MD #16
2016 NOV 14 PM 1: 26
Clerk of the
Circuit Court

Case: CAL16-41597
NEW CASE/PRO SE
CV CLERK FEE-          80.00
MD LEGAL SERV         55.00
RIF - NEW CAS         30.00
TOTAL                165.00
Rcmt PG15    Rcpt # 49797
SJH      MT      Blk # 571
Nov 14, 2016        01:27 PM

### COMPLAINT AND JURY DEMAND

    The Plaintiff, Thomas John Alston, brings this complaint against the defendants Equifax

Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and

Trans Union, LLC ("Transunion") and alleges as follows:

### PRELIMINARY STATEMENT

    1.    This is an action for a consumer seeking actual, statutory and punitive damages,

costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. ("FCRA") and the common

law tort of defamation.

1



## PARTIES

2.      The Plaintiff is a natural person and a "consumer" as defined by § 1681a(c).

3.      Defendants Equifax, Experian and Transunion (collectively, the "CRAs") are "consumer reporting agencies," as defined in 15 U.S.C. §1681a(f). Upon information and belief the CRAs are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

## FACTUAL ALLEGATIONS

4.      In October 2016 Plaintiff viewed or attempted to view a current copy of his credit report from each of the CRAs. With the exception of Transunion, the Plaintiff was able to view his credit reports. In response to his request for his Transunion credit report, the Plaintiff received a message stating "We are unable to complete your request" and "Unfortunately, your request cannot be fulfilled online at this time, based upon the data provided". Plaintiff provided the same data to Transunion that he provided to the other CRAs who in return were able to provide him his report and therefore Transunion had sufficient data to do the same.

5.      Immediately after, using Equifax's website, Plaintiff submitted an online dispute of certain information in Plaintiff's credit report. In his online dispute the Plaintiff stated the inquiries from Chase Card, Elan Financial Services, FIA/CS, and SunTrust were unauthorized and/or impermissible. By letters dated October 8, 2016, Plaintiff disputed several inquiries on his current Experian report and an old Transunion credit report. On his Experian report he disputed the inquiries by Greensky, Visio Fin Svcs, Chase Card, PNC Bank, AMPS and SunTrust. As for his Transunion report, he disputed inquiries by Bank of America, Columbia Bank, Visio Financial and CBC/Credit Card Builders.

2

6.     Upon information and belief, none of the CRAs did an adequate and/or reasonable investigation of Plaintiff's disputes. Whereas, Experian and Equifax *may* have performed superficial investigations at best, Transunion did not even bother to conduct a superficial investigation but conducted *no* investigation at all. Experian and Equifax did not remove any of the disputed inquiries. In response to Plaintiff's disputes of the inquiries, Experian and Equifax did not take any steps to verify that the requesting entities ("Requestors") identified in paragraph 5 actually (i) obtained Plaintiff's approval or (ii) made a firm offer of credit or (iii) had an account held by the Plaintiff. Instead, Experian and Equifax either completely disregarded Plaintiff's dispute and continued reporting the inquiries or submitted an electronic request to the Requestors and parroted the response without performing *any* procedure to assure the accuracy or competency of the Requestors' response.

7.     Transunion, like Experian and Equifax, did not remove any disputed inquiries. But, unlike Experian and Equifax, Transunion did not conduct *any* investigation of the disputes. Rather than investigating Plaintiff's dispute of the illegal inquiries, Transunion sent correspondence to Plaintiff that disingenuously claimed Transunion was unable to locate his credit file. Transunion's representation to Plaintiff that it could not locate his credit file was false. The dispute that Plaintiff sent to Transunion contained essentially the same information and content that was sent to Experian. Just as Experian received sufficient information from Plaintiff's dispute to locate his credit file, Transunion had sufficient information to locate his file. In fact, in January 2016, Plaintiff sent a dispute to Transunion wherein the Plaintiff provided the same identifying information, which was simply his name and address. He did not include his social security number nor did he provide any documents, such as utility bill or driver's license,

3

to verify his identity. Despite receiving no more information than Plaintiff's name and address, Transunion was able to locate Plaintiff's file and investigate his January 2016 dispute.

8.      By letters dated October 24, 2016, Plaintiff requested a description of Equifax's and Experian's investigation of Plaintiff's disputes dated October 7th and 8th, respectively. In addition to the request for an investigation description, the dispute letter requested another investigation of the disputed credit inquiries. Also, Plaintiff's dispute with Experian included a request for his complete credit file and specifically requested information from his credit file that directly related to Experian's release of Plaintiff's credit reports. With respect to Transunion, Plaintiff authored a letter on October 24, 2016 that requested his credit report. In his letter he provided a file number for a report Transunion issued for him on January 11, 2016, as a reminder that Transunion has sufficient information to locate his file and conduct an investigation.

9.      Equifax failed to provide a description of the investigation it conducted of Plaintiff's dispute. Experian responded with correspondence dated November 2, 2016, wherein Experian provided a general description of its investigation process and also included Experian's dispute results. But Experian failed to provide a copy of Plaintiff's revised credit report and failed to provide Plaintiff's credit file. Instead of providing Plaintiff's revised credit report, Experian provided a copy of what appears to be Plaintiff's deceased father's credit report. Presumably, Experian provided Plaintiff's deceased father's credit report to other third parties requesting Plaintiff's credit report. Upon information and belief, the erroneous credit reports Experian provided to other third parties had a negative effect on Plaintiff's credit reputation as a collection account appeared on the report. Regarding Plaintiff's request for his credit file, Experian made no effort to provide the requested information and did not even bother to acknowledge Plaintiff's request for such information.

4

10.    Just as in their previous investigations of the October 7th and 8th 2016 disputes, Experian and Equifax did not conduct an actual investigation of Plaintiff dispute of the credit inquires. Again, either Experian and Equifax completely failed to perform any investigation at all or the CRAs' relied exclusively on the investigation of the Requestors. At best, Experian and Equifax abdicated their statutorily obligations by relying on the Requestors' investigations without performing any steps to assure the Requestors' investigation results were accurate or complete.

11.    On November 1, 2016, Transunion issued a credit report for the Plaintiff. Transunion's issuance of the November 1st report was evidence that Transunion could have and should have issued a report in response to Plaintiff's request on or about October 8, 2016. Similarly, Transunion's issuance of the November 1st report was evidence that Transunion could have located Plaintiff's credit file in response to Plaintiff's dispute letter dated October 8th. The November 1st Transunion report contained several credit inquires that Plaintiff disputed with his letter dated October 8, 2016. By letter dated November 12, 2016, Plaintiff disputed several credit inquires—Bank of America, ELAN, Visio, CBC, LIMA One, Dominion, Columbia Bank and Capital One—on the basis that the inquiries were done for an impermissible purpose.

## COUNT ONE: VIOLATIONS OF FCRA
### (15 U.S.C. §1681e(a))

12.    Plaintiff incorporates paragraphs 1-11 by reference.

13.    The Requestors did not obtain the Plaintiff's reports for the purpose of an account review or to make a firm offer of credit or to process an credit application. Upon information and belief, the Requestors falsely represented that they were obtaining Plaintiff's report for a permissible purpose. If the CRAs had sufficient procedures in place, then the CRAs would have known that the Requestors did not have a permissible purpose to obtain Plaintiff's reports.

14.     The CRAs can prevent impermissible credit pulls by requiring proof or certification of the specific purpose for the credit inquiry. The CRA should require proof that an entity has an account before an account review can be conducted. Likewise, the CRA should require proof that an entity intends to make a firm offer of credit before releasing a report for that purpose. And a CRA should require proof that a consumer has applied for credit or authorized the credit inquiry before releasing a report for such purposes. But, the CRAs do not require any proof of the specific purpose of a credit inquiry and as a result the CRAs do not know the specific purpose for a credit pull before a CRA releases the report.

15.     At a minimum, the CRAs should require a Requestor to certify that it is going to make a firm offer of credit, or perform an account review or process an application before each request for that consumer's report. Rather, the CRAs do not require any certification whatsoever or they merely require a one-time blanket certification that the Requestor will purportedly only obtain the report for a laundry list of permissible purposes. A blanket certification is not a reasonable procedure to certify that a Requestor is obtaining a report for a promotional inquiry, or for an account review, or for collection purposes or to process an application, because such a blanket certification cannot prevent or properly guard against misuse, or false representations.

16.     The CRAs do not verify that the creditor is reporting a tradeline to the consumer's credit report before disbursing a credit report for a review or collection. Plaintiff does not have an account with such entities and therefore the Requestors could not have obtained Plaintiff's report for an account review or for collection purposes. Neither has Plaintiff received an offer of credit from these entities. Based on the fact that Plaintiff did not receive an offer of credit, Plaintiff believes the Requestors did not make an offer of credit to him. Therefore, Plaintiff's reports were not released for the purposes of making a firm offer of credit.

17.    Plaintiff did not apply for credit with the Requestors and therefore the Requestors could not have acquired his credit report on such a premise. In fact, Plaintiff has no business dealings with the Requestors, no communications with the Requestors and certainly did not provide the Requestors with any authorization or permission to obtain his credit report. Any representation from the Requestors that Plaintiff applied for credit with them or that they had authorization from Plaintiff to pull his report, was false.

18.    Regarding credit inquiries for account reviews or for collection purposes, in addition to require a specific certification that the Requestor is obtaining the report for that purpose, the CRAs should have procedures that include searching a consumer's file to see if the companies responsible for the disputed inquiries have tradelines or accounts on the consumer's report or file. But the CRAs do not require or request proof that the user has an account with the consumer before disbursing a consumer's report for an account review or collection purposes. In this instance the CRAs were well aware that Plaintiff did not have an account with the Requestors because the Plaintiff's credit reports did not contain tradelines for these entities. Upon information and belief, the CRAs did not check Plaintiff's credit report to see if the source of the disputed inquiries had tradelines on Plaintiff's report or file. Had the CRAs searched the Plaintiff's report or file for a tradeline from the Requestors, then the CRA would have been alerted that the Requestors were likely misrepresenting the purpose of their credit inquiry and requesting the Plaintiff's report for an impermissible purpose.

19.    With respect to any inquiries made purportedly for an offer of credit, the CRAs do not maintain and/or employ any procedures to assure that an entity is actually requesting a consumer report to make such an offer. A Requestor should have to specifically represent to the CRA that the Requestor intends to offer a certain type of credit during a certain time period to

7

the Plaintiff. Similarly, the CRAs do not require the requesting entities verify they have been authorized by the consumer to acquire Plaintiff's report. A Requestor should be required to specifically state the form of authorization (i.e. application, etc.) given by the Plaintiff.

20.     Compounding the problem, the CRAs do not keep good records of illegal or unauthorized credit pulls and thus the CRAs do not have an accurate record or portrayal of the reliability of its subscribers requesting consumers' reports. If the CRAs kept reasonable records, then they would know that the entities requesting the consumers' reports often did not have a permissible purpose, and that they could not rely on these entities general averment that they were requesting reports for permissible purposes. In that vein, the CRAs would have developed stricter procedures for entities to obtain a consumer report. But the CRAs avoid adopting procedures to kept good, accurate records and strict procedures for releasing consumer reports, because the CRAs would lose business revenue and would increase its business costs, both of which would decrease the CRAs' profits. The CRAs devote too few resources to reviewing user's applications, certifications or requests for consumer's credit reports, which run an unjustifiable risk of it violating consumer's privacy rights protected by the FCRA.

21.     Plaintiff's reports do not contain any tradelines for the Requestors and therefore the CRAs knew or had good reason to know or should have known that it was not disbursing Plaintiff's report for an account review inquiry. Furthermore, upon information and belief, the CRAs have received complaints from other consumers regarding the Requestors obtaining their reports for the false premise of an account review. Similarly, the CRAs have also received complaints from other consumers that the Requestors obtained their reports on the false premises of making a firm offer of credit or for processing a credit application. After a reasonable time to conduct discovery, Plaintiff believes he can prove that the CRAs have received hundreds, if not

8

thousands, of disputes from consumers like Plaintiffs, complaining of the same conduct as alleged in this complaint, with respect to the Requestors' practice of obtaining consumers' credit reports without proper authority to do so.

22.     The CRAs know their procedures are not reasonably designed to prevent the disbursement of credit reports to creditors for impermissible purposes. The CRAs know that purported creditors, such as Requestors, often request credit reports for purposes of account review when the Requestors does not hold an account with the consumer and is obtaining the report for purposes (i.e. research, marketing, etc.) not allowed under the FCRA. Likewise, the CRAs know that companies, such as Requestors, often request reports for purpose of firm offer of credit or to process a credit application when the Requestors have no intention of making an offer of credit or have not received an application for credit from the consumer. After a reasonable time to conduct discovery, Plaintiff believes he can prove that despite consumers' disputes, the CRAs intentionally, knowingly and recklessly chose not to correct its policies with respect to selling credit reports to users who do not have a legal purpose to receive the consumers' credit information.

23.     After a reasonable time to conduct discovery, Plaintiff believes he can prove that the CRAs have engaged in a pattern and practice of wrongful and unlawful behavior with specific respect to its illegal disbursement of consumer reports for processing credit applications and/or promotional inquires and/or account reviews when it fact the CRAs knew or should have known that the Requestors had no intention of making a firm offer of credit or doing an account review or processing a credit application for those consumers.

**24.     The CRAs conduct in recklessly disclosing Plaintiff's reports under procedures that are known to be unreasonable violates §1681e(a).**

9

25.     As a direct and proximate result of the CRAs' violations of the FCRA, Plaintiff
has suffered and will continue to suffer considerable harm and injury including, but not limited
to: mental anguish and emotional distress from the ongoing invasion of his privacy and the
possibility of future unauthorized inquiries into his personal financial information and/or risk of
additional instances of identity theft resulting from such inquiries, entitling Plaintiff to an award
of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs
of this action pursuant to 15 U.S.C. § 1681*o*.

26.     The CRAs violations were not only negligent but also willful within the meaning
of 15 U.S.C. §1681n(a). As a result of the CRAs' willful noncompliance with the requirements of
§1681e(a), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. §1681n(a).

## COUNT TWO: VIOLATIONS OF FCRA
### (15 U.S.C. §1681e(b))

27.     Plaintiff incorporates paragraphs 1-26 by reference.

28.     Plaintiff directly notified the CRAs on several occasions that the inquiries were
unauthorized and/or impermissible. Therefore, the CRAs had actual knowledge that the credit
inquiries were illegal. Despite their actual knowledge of the illegality of the credit inquiries, the
CRAs continued to report the credit inquiries as having a permissible purpose on Plaintiff's
report. The CRAs have no procedures that utilize the information they receive from a consumer
in the preparation of their credit reports. But in order for the CRAs to assure maximum accurate
information in their credit reports, the CRAs must have a procedure that considers and utilizes
information from the consumer in its preparation of credit reports.

29.     The cost of implementing a procedure that considers and/or utilizes information
from a consumer in the preparation of credit reports is not expensive and certainly not
prohibitively expensive when considering the possible harm of reporting inaccurate information

that could prevent a consumer from obtaining credit. Furthermore, the CRAs know the FCRA requires that their procedures include a process that takes into account or otherwise utilize information or notice from a consumer of inaccuracy or incompleteness in a credit report. A consumer, such as Plaintiff, is in the best position and with the most incentive to notify a CRA of inaccuracy or incompleteness in his file or report.

30.     After a reasonable time to conduct discovery, Plaintiff believes that he can prove that the CRAs have engaged in a pattern and practice of wrongful and unlawful behavior with specific respect to their failure to utilize prior complaints from consumers in its procedures for preparing credit reports with maximum accuracy.

**31.     The CRAs conduct in recklessly failing to use Notice from consumers' of inaccuracies or incompleteness in their reports violates §1681e(b).**

32.     As a direct and proximate result of the CRAs' violations of the FCRA, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: damage to his credit score and financial reputation, pecuniary costs and expenses incurred to correct or attempt to correct his reports, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

33.     The CRAs violations were not only negligent but also willful within the meaning of 15 U.S.C. §1681n(a). As a result of the CRAs' willful noncompliance with the requirements of §1681e(a), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. §1681n(a).

**34.**     With respect to Experian only, that Defendant violated its obligations under 15 U.S.C. §1681e(b) by failing to utilize or employ reasonable procedures to prepare accurate reports when it sent Plaintiff's deceased father's report to Plaintiff or third parties.

11

35.     As a direct and proximate result of Experian's violation, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: damage to his credit score and financial reputation, pecuniary costs and expenses incurred to correct or attempt to correct his reports, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

36.     Experian's violations were not only negligent but also willful within the meaning of 15 U.S.C. §1681n(a). As a result of Experian's willful noncompliance with the requirements of §1681e(a), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. §1681n(a).

## COUNT THREE: VIOLATIONS OF FCRA
### (15 U.S.C. §1681g)

37.     Plaintiff incorporates paragraphs 1-36 by reference.

38.     **Trans Union violated its obligations under 15 U.S.C. §1681g by failing to issue Plaintiff a credit report after Plaintiff requested his credit report on or about October 8, 2016.** After a reasonable time to conduct discovery, Plaintiff believes that he can prove Trans Union has engaged in a pattern and practice of wrongful and unlawful behavior with specific respect to Trans Union's systematic failure to provide consumers with credit reports after receiving a valid and adequate request from consumers for their reports.

39.     **Experian violated its obligations under 15 U.S.C. §1681g by failing to provide Plaintiff's credit file after Plaintiff requested his file on or about October 24, 2016.** After a reasonable time to conduct discovery, Plaintiff believes that he can prove that Experian has engaged in a pattern and practice of wrongful and unlawful behavior with specific respect to Experian's systematic intentional failure to provide consumers with their credit files after receiving a valid and adequate request from consumers for their files.

12

40.     As a direct and proximate result of Equifax's and Experian's foregoing violations of 1681g, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: mental anguish and emotional distress such as frustration and anger, pecuniary costs and expenses incurred to obtain the information on his file and report, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

41.     The violations were not only negligent but also willful within the meaning of 15 U.S.C. §1681n(a). As a result of the CRAs' willful noncompliance with the requirements of §1681e(a), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. §1681n(a).

## COUNT FOUR: VIOLATIONS OF FCRA
## (15 U.S.C. §1681i)

42.     Plaintiff incorporates paragraphs 1-41 by reference.

**43.     The CRAs violated their obligations under 15 U.S.C. §1681i(a)(1),(2)&(4) by failing to reasonably investigate Plaintiff's disputes.** Instead of conducting a reasonable investigation, the CRAs simply forwarded the Plaintiff's disputes to the Requestors and accepted the Requestors investigation results without performing any evaluation or assessment as to the accuracy of the results.

44.     A reasonable investigation would have consisted of the CRAs reconciling the claims in Plaintiff's disputes with the Requestors investigation results. The CRAs did not consider all the information in Plaintiff's disputes. Had the CRAs considered all the information in the dispute, the CRAs would have recognized that they could not rely exclusively on the source or the Requestors in their investigation.

45.     At a minimum, they would have required the Requestors to provide proof that they had an application or authorization from the Plaintiff, or they would have required proof

that the Requestors made a firm offer of credit, or required proof that the Requestors had an account with the Plaintiff. Furthermore, not only did the CRAs not consider the information in its investigation, the CRAs did not forward all the information from Plaintiff's dispute to the Requestors, thereby further undermining the adequacy of the investigation.

46.     After a reasonable time to conduct discovery, Plaintiff believes that he can prove that the CRAs investigation of disputes based on unauthorized credit inquires are distinctly different and insufficient when compared to the CRAs investigations of inaccurate tradelines. Upon information and belief, the CRAs do not always even bother to forward the dispute to the source of information when a consumer is making a dispute  based on a credit inquiry.

**47.     Trans Union violated its obligations under 15 U.S.C. §1681i(a)(1)&(3) by failing to reasonably investigate Plaintiff's dispute on the false premise that the Plaintiff did not provide sufficient information for Trans Union to conduct an investigation.** After a reasonable time to conduct discovery, Plaintiff believes that he can prove Trans Union intentionally and systematically refuses to investigate credit disputes on the false basis that it cannot locate a consumer's file. More specifically, Plaintiff believes that discovery will reveal that the same information provided in a dispute that Trans Union found was insufficient, was not only sufficient for Experian and Equifax to locate the file and investigate the dispute, but was sufficient for Trans Union in earlier disputes.

**48.     Experian violated its obligations under 15 U.S.C. §1681i(a)(6) by failing to provide Plaintiff with a revised copy of his report.** After a reasonable time to conduct discovery, Plaintiff believes that he can prove that Experian often negligently or recklessly sends the wrong reports with its notice of results to consumers that have disputed information on their report.

14

49.     **Equifax violated its obligations under 15 U.S.C. §1681i(a)(7) by failing to provide Plaintiff with a description of investigation results.** After a reasonable time to conduct discovery, Plaintiff believes that he can prove that Equifax often negligently or recklessly fails to provide a description of its investigation after receiving a request for such.

50.     As a direct and proximate result of the CRAs' foregoing violations of 1681i, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: frustration, anxiety, anger and other mental anguish and emotional distress, pecuniary costs and expenses incurred to correct the information on his report, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

51.     The violations were not only negligent but also willful within the meaning of 15 U.S.C. §1681n(a). As a result of the CRAs' willful noncompliance with the requirements of §1681e(a), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. §1681n(a).

## COUNT FIVE: DEFAMATION

52.     Plaintiffs incorporate paragraphs 1-51 by reference.

53.     The CRAs publically published false statements regarding Plaintiff's credit history

54.     Upon information and belief, those false statement(s) were intentional and malicious as Plaintiff was targeted because he has sued the CRAs several times in the past.

55.     At a minimum, the CRAs should have known that the information was false, especially after receiving notice from the Plaintiff that the information was false, and therefore, the CRAs' decision to publicize this false information was defamatory.

56.     Despite knowing that Plaintiff's credit history was being portrayed inaccurately, the Defendants published this information to third parties while knowing that the inaccurate

reports would have a negative effect on Plaintiff's credit worthiness and decrease Plaintiff's chances of obtaining credit.

57.     Defendants' false statement(s) were published without a privilege.

58.     As a result of the false and defamatory statements published by the Defendants, the financial character and reputation of the Plaintiff was harmed, his standing and reputation in the financial and credit community was impaired, and he suffered mental anguish.

59.     As a direct and proximate result of the false and defamatory credit reporting published by Defendants, the Plaintiff's credit score and credit profiles were injured, thereby suffering a loss of protective credit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in his favor for the following:

(a)     Award actual damages in the amount of $50,000 for counts One thru Five;
(b)     Award statutory in the amount of $3,000 for counts One thru Four;
(c)     Award punitive damages in the amount of $100,000 for counts One thru Four;
(d)     Award costs and reasonable attorney's fees and costs; and
(e)     Any such other relief the Court deems just, equitable and proper.

## DEMAND FOR TRIAL BY JURY

60.     Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

**THOMAS ALSTON**

Thomas Alston, Pro Se Plaintiff
10012 Cedarhollow Ln
Largo, MD 20774
Tel: (240) 432-0927
Email: talston@washlegal.com

16



U.S. POSTAGE PAID
UPPER MARLBORO, MD
2772
NOV 28 16
AMOUNT
$8.20
R2304-M115076-07

21202

1000

CERTIFIED MAIL

7016 0910 0001 9148 2263

CSC-Lawyers
7 Saint Paul St.
Suite 820
Baltimore, MD 21202

RETURN RECEIPT
REQUESTED

Stephon Magruder
P.O. Box 4624
Upper Marlboro, MD 20775

